IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ESTELLA TRAMMELL, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>ACCENTCARE, INC.,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. 1:17-CV-1129-LY |

**DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

Defendant AccentCare, Inc. ("AccentCare," the "Company," or "Defendant") moves the Court to dismiss or, in the alternative, stay this proceeding and compel Plaintiff Estella Trammell ("Trammell" or "Plaintiff") to arbitrate her claims, on an individualized basis, as provided for in the parties' Arbitration Agreement. In support of its motion, AccentCare respectfully shows the Court as follows:

**I.
INTRODUCTION**

Plaintiff's Fair Labor Standards Act ("FLSA") claim against her former employer, AccentCare, must be decided through individualized arbitration because her claim is covered by a valid and enforceable written arbitration agreement, which is governed by the Federal Arbitration Act ("FAA"). As a result, this Court should enforce the agreement according to its terms, including its Class Action Waiver provision, and compel Plaintiff to arbitrate her

individual claims against Defendant. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199 (5th Cir. 2016).

## II.
## STATEMENT OF FACTS

1. Plaintiff worked for AccentCare from April 17, 1997, until her last paid workday on August 19, 2017. As a Special Attendant, Plaintiff is responsible for providing personal care assistance services to the client in accordance with the established service plan to enable clients to function in the home and community.

2. Throughout her employment, and as recently as April 29, 2017, Plaintiff consistently reported her mailing address to be 716 Pine Valley Loop, Smithville, Texas 78957.[1] Her Texas Driver's license, issued on March 6, 2017, and her proof of automobile insurance all identify the same mailing address.[2] As a result, AccentCare sent all mailings to Plaintiff, including tax forms, insurance information, and other documentation, to this mailing address.[3] AccentCare used this mailing address for the past 20 years and never received notice that any document was returned and/or was undeliverable.[4]

3. On or about May 26, 2016, AccentCare retained JND Legal Administration, Inc. ("JND") to conduct the roll-out of AccentCare's *Mutual Arbitration Agreement Between At-Will Employee and Company* ("Arbitration Agreement" or "Agreement").[5] JND is a legal administration services provider that provides printing and presorting services, obtains address

---

[1] Declaration of Darrell Prahl at ¶ 3.
[2] *Id.*
[3] *Id*.
[4] *Id.*
[5] Declaration of Jennifer Keough at ¶ 4.

**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**
**(NO. 1:17-CV-1129-LY)–Page 2**

updates through the National Change of Address System ("NCOA") database, provides further research services if necessary, and tracks each item for accurate reporting to its clients.[6]

4. Through its systematic process described in the attached declaration by Jennifer Keough, on June 8, 2016, JND processed and delivered a properly addressed envelope with the necessary postage paid, containing a 1-page Cover Letter, the Arbitration Agreement (2 copies), and a pre-paid return envelope, to the United States Postal Service to be mailed to Estella Trammell at 716 Pine Valley Loop, Smithville, Texas 78957.[7] No notice was received that this mailing to Estella Trammell was returned and/or undeliverable.[8]

5. The Cover Letter that was mailed to Plaintiff along with the Arbitration Agreement states, in pertinent part:

> The Agreement will apply to all employees who are employed with the Company on June 20, 2016 – the Agreement effective date.
>
> The Agreement is not negotiable. The Agreement will apply to you even if you do not sign and send it back to the Company. Like any other Company policy or procedure (e.g. expense reimbursement policy, the code of conduct, PTO policy, and tuition reimbursement policy, to name a few), the Agreement is also considered to apply to all employees in the same way.
>
> You may of course have an attorney review the Agreement. In fact, the Company encourages anyone with questions regarding the Agreement to consult their personal attorney to have the Agreement reviewed, at the Employees' own expense.[9]

---

[6] *Id.*
[7] *Id.* at 4–12.
[8] *Id.* at ¶ 10.
[9] *Id.* at Exh. B, ¶ 12.

**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**
**(NO. 1:17-CV-1129-LY)–Page 3**

6.  The Agreement expressly states that it is governed by the FAA.[10] Under the "Agreement to Arbitrate" section of the Agreement, all disputes between the parties must be arbitrated:

> "Covered Claims" are any statutory or common law legal claims that relate to and arise out of my employment, including those concerning wages or any element of compensation, employment (including, but not limited to, any claims concerning harassment, discrimination, or retaliation), leaves of absence, reasonable accommodation, or termination of employment.  "Covered Claims" include claims based on actions that arose prior to the Effective Date of this Agreement, unless such claims have already been asserted as Pending Litigation prior to the Effective Date.[11]

The Agreement also contains a provision waiving class, collective and representative proceedings ("Class Action Waiver"):[12]

> I agree that Covered Claims will be arbitrated only on an individual basis, and that both Company and I waive the right to initiate, participate in or receive money or any other relief from any class, collective, or representative proceeding.  No party may bring a claim on behalf of other individuals, and any arbitrator hearing my claim may not: (i) combine more than one individual's claim or claims into a single case; (ii) order, require, participate in or facilitate production of class-wide contact information or notification of others of potential claims; or (iii) arbitrate any form of class, collective, or representative proceeding.

### III.
### THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., provides in pertinent part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[10] *Id.* at Exh. A, ¶ 1
[11] *Id.* at Exh. A, ¶ 2.
[12] *Id.* at Exh. A.

**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**
**(NO. 1:17-CV-1129-LY)–Page 4**

9 U.S.C.A. § 2 (West 1970).

The FAA applies to all transactions "involving commerce." 9 U.S.C. § 2. The phrase "involving commerce" in the FAA has been interpreted by the United States Supreme Court to mean "affecting commerce," and the phrase signals a congressional intent to extend the FAA to the limits of the Commerce Clause power. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *see also In re Nexion Health at Humble*, 173 S.W.3d 67, 69 (Tex. 2005) ("The FAA extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach.").

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24–25 (1983). Indeed, district courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960). Accordingly, to the extent any doubts exist as to whether Plaintiff's claim should be arbitrated under the Agreement, this Court must resolve any such doubts in favor of arbitration.

Here, not only does the Arbitration Agreement expressly provide that it is governed by the FAA,[13] but the FAA applies because AccentCare provides post-acute healthcare services to individuals with chronic conditions and offers services ranging from personal and non-medical care to skilled nursing, rehabilitation, hospice, and care management across the United States.[14] As a result, AccentCare's activities "affect commerce," and the Arbitration Agreement is covered by the FAA.

---

[13] *Id.* at Exh. A. ¶ 12
[14] Declaration of Darrell Prahl at ¶ 2.

**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION
(NO. 1:17-CV-1129-LY)–Page 5**

Moreover, in deciding whether a dispute is subject to arbitration under the FAA, a court must determine whether a valid agreement to arbitrate exists, and, if so, whether the subject matter of the dispute is covered by the arbitration agreement. *Howsam*, 537 U.S. at 83–84; *Paine Webber, Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). Because the Arbitration Agreement is valid and enforceable and covers the subject matter of Plaintiff's claims against Defendant, Plaintiff's claims are subject to arbitration under the FAA.

## IV.
## LEGAL ANALYSIS

A. **PLAINTIFF RECEIVED NOTICE OF THE ARBITRATION AGREEMENT.**

It is well settled that proof a letter properly directed was placed in a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed. *United States v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007); *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983); *Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 918 (N.D. Tex. 2000); *see also Southland Life Ins. Co. v. Greenwade*, 159 S.W.2d 854, 857 (Comm'n App. 1942, op. adopted) ("…when a letter properly addressed and with postage prepaid is mailed, a presumption of fact (rebuttable of course) arises that it was duly received by the addressee.") The placement of a letter in the mail may be proved by a sworn statement, *Ekong*, 518 F.3d at 287, or by circumstantial evidence such as the sender's customary mailing practice. *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007). An affidavit simply denying receipt of the notice is insufficient to undermine the presumption of receipt. *Ekong*, 518 F.3d at 287; *See also Cash v. AXA Equitable Life Ins. Co.*, 229 F.Supp.3d 542, 550 (W.D. Tex. 2017).

In *AXA*, the Court found the presumption of receipt applied after AXA produced affidavits providing (1) a step-by-step outline of the general process for mailing notices, (2) the process AXA used to mail the notices at issue, and (3) a copy of what was mailed. *Id.* at 549. The Court held that Plaintiff's conclusory statement that she never received the Notice was insufficient to defeat summary judgment and that AXA provide sufficient proof to create a presumption that it mailed the notice at issue. The presumption of receipt also applies here because JND, on behalf of AccentCare, through its systematic process described in the attached Keough Declaration, properly addressed, applied postage, and mailed the Cover Letter and Arbitration Agreement to Plaintiff at the same address that she has resided at for over twenty years—716 Pine Valley Loop, Smithville, Texas 78957.[15] As a result, Defendant has established a presumption that Plaintiff received the Arbitration Agreement and Cover Letter, which states that she will be bound by it. Considered in its totality, this evidence is more than sufficient to create a presumption of receipt as a matter of law. *See also Gamel v. Grant Prideco. L.P.*, 625 Fed.App. 690, 694 (5th Cir. 2015) (Affidavit from EEOC employee responsible for mailing right to sue letters in which she stated that her records indicated she mailed the right to sue letter, in addition to circumstantial evidence in the form of an internal EEOC log in addition to the stamped date on the letter was sufficient to create a presumption of receipt.)

B.  **THE ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE AND COVERS THE SUBJECT MATTER OF THIS DISPUTE.**

    **(1)  The Agreement is Valid and Enforceable.**

To determine whether a valid and enforceable agreement to arbitrate exists, the Arbitration Agreement must be examined under Texas state law regarding contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In deciding whether to

---

[15] Declaration of Jennifer Keough at ¶ 10; and Declaration of Darrell Prahl at ¶ 3.

**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**
**(NO. 1:17-CV-1129-LY)–Page 7**

compel arbitration, the trial court is generally tasked with determining two "gateway" issues: (1) whether there was an agreement to arbitrate; and (2) whether the agreement covers the dispute. *Howsam*, 537 U.S. at 83–84. Here, it is undeniable that a valid and enforceable agreement to arbitrate exists that expressly covers Plaintiff's claims.

By continuing to work for an employer after receiving notice of an arbitration policy, an employee accepts the agreement to arbitrate as a matter of law. *May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004); *In re Dallas Peterbilt, Ltd.*, L.L.P., 196 S.W.3d 161, 162–63 (Tex. 2006); *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002). Acceptance does not require a signature. *See In re Dillard Dep't Stores*, 198 S.W.3d 778, 780–81 (Tex. 2006) (acceptance found when employee received, but did not sign, summary of arbitration policy and continued working past its effective date); *Johnson v. Coca-Cola Refreshments USA, Inc.*, No. 4:11-CV-649, 2012 WL 695837, *4 (E.D. Tex. Feb. 3, 2012) ("After notice, Plaintiff continued to work for Defendant, which indicates his acceptance of the change in his employment relationship and indicates his agreement to be bound by [the arbitration] Program."); *Burton v. Citigroup*, No. 3-03-CV-3033-M, 2004 WL 1285033, *5 (N.D. Tex. June 9, 2004) ("whether plaintiff signed any particular document is irrelevant . . . [plaintiff] manifested her acceptance as a matter of law by continuing to work for [defendant] after notification that the arbitration policy would be implemented."); *Jones v. Fujitsu Network Comm'ns., Inc.*, 81 F.Supp.2d 688, 692 (N.D. Tex. 1999) (if employee continues working for employer with knowledge of arbitration policy, employee "accept[s] the arbitration policy as a matter of law"). Here, Plaintiff accepted the Agreement and became bound to its terms after receiving the Cover Letter and Arbitration Agreement and continuing to work for AccentCare.

**(2)    The Subject Matter of the Lawsuit is Covered by the Agreement.**

There can be no dispute that the Agreement covers Plaintiff's FLSA claim. The Agreement expressly covers any "controversy, claim or dispute by an employee," concerning "wages or any element of compensation," and the Agreement expressly covers claims brought under any federal law or statute.[16] The Agreement also expressly covers "any statutory or common law legal claims that arise out of [her] employment."[17]

Plaintiff's claims for alleged violations of the overtime pay provisions and discretionary bonus provisions of the FLSA fall squarely within the scope of the Agreement. As a result, the existence of a valid and enforceable arbitration agreement that covers the subject matter of this dispute cannot be denied.

**C.    FEDERAL LAW MANDATES THAT PLAINTIFF BE REQUIRED TO ARBITRATE HER CLAIM.**

When an arbitration agreement is found to exist that is governed by the FAA, "[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration … [.]" *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The FAA also provides for a stay of proceedings in district courts when an issue in the proceedings is referable to arbitration. 9 U.S.C. § 3. Where some, but not all, of a plaintiff's claims are arbitrable, a stay of judicial proceedings pending arbitration is appropriate. However, where, as here, all of Plaintiff's claims are arbitrable, a stay is not necessary, and the legal action should be dismissed. *See, e.g., Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

---

[16] Declaration of Jennifer Keough, at Exh. A.
[17] *Id.* at Exh. A.

**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION
(NO. 1:17-CV-1129-LY)–Page 9**

Accordingly, this Court should therefore dismiss this lawsuit and order Plaintiff to arbitrate her claim against AccentCare.

D. **THE ARBITRATION MUST PROCEED AS AN INDIVIDUAL ACTION, RATHER THAN A CLASS OR COLLECTIVE ACTION.**

The Court should also enforce the Agreement's Class Action Waiver and compel Plaintiff to arbitrate her claims on an individualized basis in accordance with the terms of the Agreement. It is improper to force a party into a class proceeding to which it did not agree, because arbitration "is a matter of consent." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681–82 (2010). The United States Supreme Court has held that, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id.* at 664 (emphasis original). Moreover, the United States Supreme Court has said, outright, that class arbitration is inconsistent with the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 342 (2011).

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). It provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4. Similarly, the FAA also authorizes federal courts to stay litigation until the arbitration has been conducted "in accordance with the terms of the [parties' arbitration] agreement . . . [.]" 9 U.S.C. § 3. The "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989).

In *Concepcion*, the Supreme Court upheld the enforceability of class waivers in FAA-governed arbitration agreements, reaffirming the bedrock principle that arbitration agreements must be enforced as written. Likewise, in *American Express Co. v. Italian Colors Restaurant*,

**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION
(NO. 1:17-CV-1129-LY)–Page 10**

the Supreme Court reiterated that courts "must rigorously enforce" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes." 133 S. Ct. 2304, 2309 (2013).

The Fifth Circuit has also repeatedly upheld the enforceability of class and collective action waivers. *See, e.g.*, *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 362 (5th Cir. 2013); *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013, 1021 (5th Cir. 2015). And, district courts within the Fifth Circuit therefore routinely dismiss claims that are subject to an arbitration agreement with a class waiver and compel arbitration on an individual basis. *See, e.g., In re Online Travel Co.*, 953 F.Supp.2d 713, 724–25 (N.D. Tex. 2013). This Court should enforce the Class Action Waiver as written, strike Plaintiff's collective action claims, and compel individual arbitration.

## V.
## CONCLUSION AND REQUEST FOR RELIEF

Defendant requests that this Court dismiss this lawsuit and compel Plaintiff to arbitrate her claims on an individual basis in accordance with the terms of the Agreement. In the alternative, Defendant requests that this action be stayed pending the resolution of Plaintiff's individualized claim through binding arbitration.

Dated February 23, 2018

Respectfully submitted,

/s/ Kimberly R. Miers
Michael P. Royal
Texas State Bar No. 00784886
Kimberly R. Miers
Texas State Bar No. 24041482
Melissa J. Ackie
Texas State Bar No. 24088686

LITTLER MENDELSON, P.C.
A Professional Corporation
100 Congress Avenue
Suite 1400
Austin, TX  78701
512.982.7250
512.982.7248 (Fax)
kmiers@littler.com
mackie@littler.com

&

LITTLER MENDELSON, P.C.A Professional Corporation
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX  75201
214.880.8100
214.880.0181 (Fax)
mroyal@littler.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF CONFERENCE**

On December 19, 2017, and thereafter, I conferred with Daniel Verrett, attorney for Plaintiff, by electronic mail to resolve the matter by agreement. Plaintiff indicated that he is opposed to this Motion.

/s/ Kimberly R. Miers
Kimberly R. Miers

**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION
(NO. 1:17-CV-1129-LY)–Page 12**

## CERTIFICATE OF SERVICE

On the 23 day of February, 2018, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, Austin Division, using the Electronic Case Filing system of the Court. I hereby certify that I have served all counsel and/or *pro se* parties of record via the Court's e-filing system as follows:

Daniel A. Verrett
MORELAND LAW FIRM, P.C.
The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
512.782.0567
512.782.0605 (Fax)
daniel@morelandlaw.com

Edmond S. Moreland, Jr.
13590 Ranch Road 12
Wimberley, Texas 78676
512.782.0567
edmond@morelandlaw.com

                                                         */s/ Kimberly R. Miers*
                                                         Kimberly R. Miers

Firmwide:153065462.2 076851.1012