IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ESTELLA TRAMMELL, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | NO. 1:17-CV-1129-LY |
| ACCENTCARE, INC., | § § | |
| Defendant. | § § § | |

**DECLARATION OF JENNIFER KEOUGH IN SUPPORT OF DEFENDANT'S MOTION
TO COMPEL ARBITRATION**

I, JENNIFER M. KEOUGH, declare and state as follows:

1.      I am Chief Executive Officer at JND Legal Administration ("JND").  The following statements are based on my personal knowledge, information provided to me by other JND employees working under my supervision, and on the documents attached to and referenced within this declaration, and if called on to do so, I could and would testify competently thereto.

2.      I am familiar with the relationship between JND and AccentCare, Inc. ("AccentCare").  I have reviewed relevant records regarding the processing, distribution, and tracking of AccentCare's updated arbitration agreement to its employees in June 2016.

3.      JND is a legal administration services provider with operations centers in Denver, Minneapolis and Seattle.  JND has extensive experience in all aspects of legal administration, and has administered settlements in hundreds of cases.  JND provides printing and presorting services, obtains address updates through the National Change of Address System ("NCOA") database, provides further research services if necessary, and tracks each item for accurate reporting to the client.

**DECLARATION OF JENNIFER KEOUGH IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION (NO. 1:17-CV-1129-LY)** –Page 1

4.      On or about May 26, 2016, AccentCare retained JND to conduct the 2016 roll-out of AccentCare's *Mutual Arbitration Agreement Between At-Will Employee and Company*, which is attached to this Declaration as Exhibit "A" (the "Arbitration Agreement").  AccentCare engaged JND to complete the following tasks (the "Project"):

(a)    Employee list clean-up, research and update addresses via NCOA and credit databases;

(b)    Format/quality review notice packet including a 1-page Cover Letter, which is attached to this Declaration as Exhibit "B" ("Cover Letter"), two copies of the 3-page Arbitration Agreement (via U.S. First Class mail), as well as a pre-paid return envelope (via Business Reply Mail);

(c)    Print and mail notice packet to employees, including printing/materials/mailing services, and postage;

(d)    Track un-deliverables and re-mail forwards;

(e)    Research undeliverables via skip-trace and re-mail; and

(f)    Process mailed forms, including postage and processing.

5.      During the time period between May 25, 2016, and October 1, 2016, a Project Manager working under my supervision executed the Project.  The Project Manager sent reports updating me and the client on the Project's progress.  I also periodically updated the client on Project.

6.      On or about May 2016, AccentCare provided the aforementioned Cover Letter and Arbitration Agreement in Word format for processing and mailing to approximately 10,814 employees.  JND's formatted the documents into .PDF "printer friendly" forms for AccentCare's approval.  AccentCare approved the finalized form.  JND then printed and prepared the driver sheet, Cover Letter, 2-copies of the Arbitration Agreement, and the pre-paid return envelope for mailing (the "Package").

7.      On or about May 2016, and through a secure electronic format, AccentCare provided JND with a list of employee's names and mailing addresses, including the following

**DECLARATION OF JENNIFER KEOUGH IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION (NO. 1:17-CV-1129-LY)**–Page 2

mailing address for Estella Trammell: 716 Pine Valley Loop, Smithville, Texas 78957.  Once this

data was obtained from AccentCare, JND immediately assigned unique identification codes and

barcodes to each employee, including Estella Trammell.  These unique codes enabled JND to track

all mailings, notices, and returns for each employee through an automated process.  The unique

identifying code assigned to Estella Trammell was 9335.

       8.      In June 2016, JND updated all AccentCare employee address data using the NCOA

database. [1]  After checking the NCOA database, there was no need to update the mailing address

for Estella Trammell because the provided address and the NCOA address were identical.  JND

utilized the Coding Accuracy Support System ("CASS") certification process to verify the

accuracy of all postal codes.  CASS is designed in cooperation with the mailing industry to improve

the accuracy of postal codes, i.e., Five-Digit ZIP Code®, ZIP + 4®, delivery point (DPCs), and

carrier route codes that appear on mailpieces.

       9.      On June 3, 2016, and June 8, 2016, JND printed, packaged, applied postage, and

delivered all mail-outs (for the non-Union English speaking AccentCare employees) to the United

States Postal Service ("USPS"), to be mailed to the respective employees on the same day.

       10.      JND maintains records of all mailings in the project specific database ("Database").

Each Notice document that was returned as undeliverable was tracked in the Database by JND

using an automated process.  Our records from the Database, which is attached as Exhibit "C",

reflect that on June 8, 2016, JND delivered the Cover Letter, Arbitration Agreement, and pre-paid

return envelope, with the necessary postage paid, to the United States Postal Service for same-day

---

[1] The NCOA database is the official United States Postal Service ("USPS") technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream.  This product is an effective tool to update address changes when a person has completed a change of address form with the USPS.  The address information is maintained in the database for 48 months.

**DECLARATION OF JENNIFER KEOUGH IN SUPPORT OF DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION (NO. 1:17-CV-1129-LY)**–Page 3

mailing to Estella Trammell's address at 716 Pine Valley Loop, Smithville, Texas 78957. No notice was received that this mailing to Estella Trammell was returned and/or undeliverable.

11.    Through JND's proprietary internal software and employee identification codes, JND kept, recorded, and generated a thorough tracking system of all mailers and repliers, including images of returned agreements.

12.    On August 30, 2016, JND sent a final summary of the distribution to AccentCare. Attached to this Declaration as Exhibit "D," is a true and correct copy of the Status Report of Major Mailings. Less than 4% of the notice mailings were identified as undeliverable. Exhibit "D".

13.    I am the duly authorized custodian of the records, (Exhibits "A", "B", "C", and "D" described in this Declaration), and I have authority to certify said records.

14.    Exhibits A and B are true and correct copies of the Arbitration Agreement and Cover Letter prepared and maintained on or about June 3, 2016, in the ordinary course of JND's business.

15.    Exhibit C is a true and correct copy of the screenshot from JND's internal database that was automatically generated on June 8, 2016, and maintained by JND in the ordinary course of its business.

16.    Exhibit D is a true and correct copy of the Status Report of Major Mailings generated and maintained by JND in the regular course of its business, on or about August 30, 2016.

17.    I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed in King County, State of Washington, on this 22nd day of February, 2018.

_____

JENNIFER M. KEOUGH

**DECLARATION OF JENNIFER KEOUGH IN SUPPORT OF DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION (NO. 1:17-CV-1129-LY)**–Page 4

# EXHIBIT A

**MUTUAL ARBITRATION AGREEMENT BETWEEN AT-WILL EMPLOYEE AND COMPANY**

1.    <u>Agreement to Arbitrate</u>.  AccentCare, Inc. or one or more of its subsidiaries  ("Company") and I agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise between me and Company, its related and affiliated companies, and/or any current or former employee of Company or a related or affiliated company.  This Agreement applies to "Covered Claims" asserted by Company or by me on or after ___June 20___, 2016 (the "Effective Date"), and my acceptance of employment or continuation of employment with Company is deemed to be acceptance of this Agreement.

"Covered Claims" are any statutory or common law legal claims that relate to and arise out of my employment, including those concerning wages or any element of compensation, employment (including, but not limited to, any claims concerning harassment, discrimination, or retaliation), leaves of absence, reasonable accommodation, or termination of employment.  "Covered Claims" include claims based on actions that arose prior to the Effective Date of this Agreement, unless such claims have already been asserted as Pending Litigation prior to the Effective Date.  Expressly excluded from Covered Claims are Excluded Claims and Pending Litigation, which are defined below. **I understand and agree that arbitration is the only litigation forum for resolving Covered Claims, and that both parties agree to waive the right to a trial before a judge or jury in federal or state court, in favor of arbitration.**

2.    <u>Waiver of Certain Claims</u>. I agree that Covered Claims will be arbitrated only on an individual basis, and that both Company and I waive the right to initiate, participate in or receive money or any other relief from any class, collective, or representative proceeding.  No party may bring a claim on behalf of other individuals, and any arbitrator hearing my claim may not: (i) combine more than one individual's claim or claims into a single case; (ii) order, require, participate in or facilitate production of class-wide contact information or notification of others of potential claims; or (iii) arbitrate any form of a class, collective, or representative proceeding.

3.    <u>Excluded Claims.</u>  Covered Claims under this agreement do not include claims for employee benefits pursuant to Company's ERISA plans, nor any claims that cannot be required to be arbitrated as a matter of law. Nothing in this Agreement prohibits me or Company from seeking emergency or temporary injunctive relief in a court of law in accordance with applicable law (however, after the court has issued a ruling concerning the emergency or temporary injunctive relief, Company and I are required to submit the dispute to arbitration pursuant to this Agreement). I also understand that I am not barred from filing a claim or charge with a governmental administrative agency, such as the National Labor Relations Board (NLRB) or Equal Employment Opportunity Commission (EEOC), or from filing a workers' compensation or unemployment compensation claim, though I am giving up the opportunity to recover monetary amounts from any such governmental agency related claim (e.g., NLRB or EEOC) and would instead be able to pursue a claim for monetary amounts solely through arbitration under this Agreement.

4.    <u>At Will Employment Unchanged by this Agreement / No Retaliation</u>.  Nothing in this Agreement changes or in any manner modifies my employment-at-will relationship with Company.  Under no circumstances will I be retaliated against in any way for invoking Company procedure in good faith to seek the resolution of a dispute. Company managers who engage in such retaliation will be subject to discipline under the appropriate Company disciplinary procedures.

5.    <u>Internal Dispute Resolution</u>.  Prior to filing a demand for arbitration, I may first present my concerns to Company resources or personnel, and Company may first present its concerns to me.  The parties to this Agreement acknowledge that doing so may help address employment disputes most effectively.

6.  <u>Right to Representation</u>.  Both Company and I shall have the right to be represented by an attorney in arbitration.  Neither side is entitled to its attorneys' fees except as provided for by applicable law.

7.  <u>Arbitration Procedures</u>.  To file a demand for arbitration:

    a.  The party desiring to pursue a legal dispute must prepare a written demand setting forth the claim(s).  Company agrees to pay its own filing fees.  Company also agrees to paying filing fees if I initiate the arbitration.

    b.  The employment dispute resolution rules of the American Arbitration Association ("AAA") effective at the time of filing will apply, and are available at https://www.adr.org/aaa/faces/rules/.  These rules are modified by the terms of this Agreement, including the following:

        i.  **Discovery.**

            a)  Each party shall be entitled to only one interrogatory limited to the identification of potential witnesses, in a form consistent with Rule 33 of the Federal Rules of Civil Procedure ("FRCP").

            b)  Each party shall be entitled to only 25 requests for production of documents, in a form consistent with Rule 34 of the FRCP.

            c)  Each party shall be entitled a maximum of two (2) eight-hour days of depositions of witnesses in a form consistent with Rule 30 of the FRCP.

            d)  Due to the simplicity, informality, and expedited nature of arbitration proceedings, absent a showing of compelling need and in favor of targeted identification of specific information, there shall be no broad or widespread collection, search, and production of documents, including electronically stored information ("ESI").  If compelling need is demonstrated by the requesting party, the production shall: (i) be narrowly tailored in scope; (ii) only come from sources that are reasonably accessible without undue burden or cost; (iii) with regard to ESI or productions including ESI, be produced in a searchable format, which is usable by the receiving party, as well as convenient and economical for the producing party; and (iv) not require electronic metadata. Where the costs and burdens of the requested discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, and the importance of the discovery in resolving the issues, the arbitrator will deny such requests or order production on condition that the requesting party advance to the producing party the reasonable costs involved in making the production, subject to the allocation of costs in the final award.

        ii.  **Arbitrator's Authority.**

            a)  The arbitrator shall follow the rules of law of the state which is my principal place of work, and applicable federal law, and the rules as stated in this Agreement.

            b)  The arbitrator shall decide all disputes related to discovery and to the agreed limits on discovery, and may allow additional discovery upon a showing of substantial need, or upon a showing of an inability to pursue or defend a certain claim.

            c)  With the agreement of Company and each individual with a Covered Claim, **and for discovery purposes only**, an arbitrator may consolidate claims filed by multiple individual employees, each on their own behalf, in a single arbitration proceeding, or may conduct a joint hearing for efficiency purposes, so long as the arbitrator does not certify (conditionally or otherwise) a collective, class, or representative action that includes individuals who have not themselves already submitted their own individual claims.

            d)  The arbitrator must issue a decision in writing.

    e)   The arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law. The arbitrator shall have the authority to grant any remedy or relief that the arbitrator deems just and equitable and which is authorized by and consistent with applicable law, including applicable statutory or other limitations on damages.

    f)   The arbitrator may order appropriate sanctions for failure of a party to comply with its obligations under this Agreement, with an order of the arbitrator, and/or the AAA rules.

    g)   The arbitrator's authority shall be limited to deciding the case submitted to the arbitration. Therefore, no decision by any arbitrator shall serve as precedent in other arbitrations except to preclude the same claim from being re-arbitrated between the same parties.

8.    <u>Confidentiality and Privacy.</u>  Arbitration proceedings are non-public. The parties and the arbitrator shall maintain the confidential nature of the arbitration proceeding, hearing and the award, except as necessary to investigate, prepare for, and present the Covered Claims, in connection with a judicial challenge to or enforcement of an award, or unless otherwise required by law or judicial decision. The arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information. Subject to the discretion of the arbitrator or agreement of the parties, any person having a direct interest in the arbitration may attend the arbitration hearing. The arbitrator may, also in its discretion, exclude any non-party from attending any part of a hearing.

9.    <u>Settlement.</u>  Any dispute with Company may be settled at any time without involvement of the arbitrator.

10.    <u>Modifications and Amendments</u>.  I understand and agree that Company may change or terminate this agreement after giving me 90 days written or electronic notice.  Any change or termination will not apply to a pending claim.

11.    <u>Savings Clause & Conformity Clause</u>.  If any provision of this agreement is determined to be unenforceable or in conflict with a mandatory provision of applicable law, it shall be construed to incorporate any mandatory provision and/or the unenforceable or conflicting provision shall be automatically severed and the remainder of the agreement shall not be affected.  Provided, however, that if the Waiver of Class and Collective Claim is found to be unenforceable, then any claim brought on a class, collective or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims.

12.    <u>Controlling Law</u>.  I agree that this agreement is made pursuant to and shall be governed under the Federal Arbitration Act.  The choice of law for substantive interpretation of Covered Claims shall be the rules of law of the state in which I work for Company and the other applicable rules, as stated in this Agreement.

***Acknowledged and Agreed to by:***

_____
Employee (Print Name)

_____     _____
                                                    Company

_____
Employee (Signature)

# EXHIBIT B



June 3, 2016

To:        Employee

From:      Stephan Rodgers, Chief Executive Officer
           Dawna Bowman, Chief Human Resources Officer


RE:        **Mutual Arbitration Agreement Between At-Will Employee and Company**

AccentCare (aka "the Company") regularly updates its Company policies to ensure that a policy is in line with current industry practices.  The Company is currently in the process of ensuring that all Company employees are on the same form of employment arbitration agreement.  As such, we are sending you the enclosed version, "Mutual Arbitration Agreement Between At-Will Employee and Company" ("Agreement"), which contains modifications to the arbitration agreement under which you are already bound through your employment at AccentCare.  The Agreement will apply to all employees who are employed with the Company on June 20, 2016 – the Agreement effective date.

The Agreement is not negotiable.  The Agreement will apply to you even if you do not sign and send it back to the Company.  Like any other Company policy or procedure (e.g. expense reimbursement policy, the code of conduct, PTO policy, and tuition reimbursement policy, to name a few), the Agreement is also considered to apply to all employees in the same way.

You may of course have an attorney review the Agreement.  In fact, the Company encourages anyone with questions regarding the Agreement to consult their personal attorney to have the Agreement reviewed, at the Employee's own expense.  Unfortunately, the Company's legal counsel cannot provide you with any advice or information regarding the Agreement.

Enclosed are two copies of the Agreement.  Please sign and return one and retain the other for your records.  The Company requests that it receive your signed copy of the Agreement by June 27, 2016.  Please contact your direct supervisor or manager should you have any questions or concerns.  They will be happy to help explain anything that may be unclear.


Sincerely,

Stephan Rodgers, CEO
AccentCare

# EXHIBIT C

Date: 6/8/2016    Type: MAILED NOTICE ⌄    Source:

Status: ⌄    Date:    Copy Address To Notes

Notes: MAILED TO: ESTELLA TRAMMELL; ; ; 716 PINE VALLEY LOOP; ; SMITHVILLE; TX; 78957-5259;

# EXHIBIT D



## AccentCare Mailing
### *Status Report of Major Mailings*
Tuesday, August 30, 2016

### *Summary Statistics*

| | |
|---|---|
| Net Undeliverable Notices: | 385 |
| Net Undeliverable Notice Rate: | 3.56% |

| | | | Items Mailed | Percent |
|---|---|---|---|---|
| **MAILED NOTICE** | | | | |
| *Original Notices Mailed* | | | | |
| | NOT RETURNED | | 10,416 | 96.3% |
| | UNDELIVERABLE | | 398 | 3.7% |
| | | Total | **10,814** | **100.0%** |
| **FORWARDED NOTICE** | | | | |
| *Forwarded to Newer Address Provided by USPS* | | | | |
| | NOT RETURNED | | 14 | 87.5% |
| | UNDELIVERABLE | | 2 | 12.5% |
| | | Total | **16** | **100.0%** |