IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ESTELLA TRAMMELL, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| V. | § | A-17-CV-1129-LY |
| ACCENTCARE, INC. | § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Motion to Dismiss, or in the Alternative, Motion to Stay Proceedings and Compel Arbitration (Dkt. No. 10); Plaintiff's Response (Dkt. No. 14); and Defendant's Reply (Dkt. No. 15). On March 20, 2018, the District Court referred the above-motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72, and Rule 1(d) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

This suit is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as a purported collective action overtime suit against AccentCare, Inc. AccentCare employed Trammell for 20 years as a Field Specialist. In that position, Trammell provided home care services— in-home housekeeping, meal preparation, toileting, dressing, showering, grooming, transportation, transport, and laundry services—for AccentCare patients. Tramell alleges that AccentCare violated the FLSA by failing to include intra-workday travel time in calculating overtime wages. AccentCare asserts that this case should be dismissed, or in the alternative stayed and arbitration compelled, because Trammell's claims are covered by a valid and enforceable arbitration agreement under the Federal

Arbitration Act. Trammell disputes whether a valid and enforceable arbitration agreement exists, arguing that she never received the arbitration agreement and never agreed to it.

## II. STANDARD OF REVIEW

In the Fifth Circuit, "a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration." *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014). District courts have the authority to compel arbitration under Section 4 and Section 206 of the Federal Arbitration Act, provided that a valid and enforceable arbitration agreement exists. *See* 9 U.S.C. §§ 4, 206. Under the FAA, written arbitration agreements in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "There is a strong presumption in favor of arbitration and the party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

When faced with a motion to compel arbitration, courts routinely apply a two-step inquiry. First, the court examines whether the parties agreed to arbitrate the dispute in question. "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Second, courts analyze "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). The parties in this case only dispute whether there is a valid agreement to arbitrate.

# III. ANALYSIS

Trammell maintains she never received and therefore, never agreed to, the arbitration agreement at issue in this case. Whether the parties entered into a valid arbitration agreement turns on state contract law. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). Arbitration agreements between employers and their employees are broadly enforceable in Texas.[1] *In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). When an arbitration agreement is imposed during employment, as here, the question is whether the arbitration agreement was a valid modification of the terms of employment. *Id.* at 203. "To demonstrate a modification of the terms of at-will employment, the proponent of the modification must demonstrate that the other party: (1) received notice of the change; and (2) accepted the change." *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002).

In the arbitration context there does not need to be a contract signed by both employer and employee in order for an arbitration provision to be enforceable. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005). Instead, notice that an arbitration policy would take effect, followed by continued employment, is enough to satisfy the employer's burden to show that an employee had notice of the new terms of his employment and that the employee accepted the terms. *Halliburton*, 80 S.W.3d at 569 (holding arbitration clause was accepted by continued employment). AccentCare submits affidavit evidence that on or about May 26, 2016, AccentCare retained JND Legal Administration, Inc., to conduct the roll-out of AccentCare's Mutual Arbitration Agreement Between At-Will Employee and Company. JND is a legal administration services provider that provides printing and presorting services, obtains address updates through the National Change of

---

[1] The parties agree that Texas law governs their dispute.

Address System database, provides further research services if necessary, and tracks each item for accurate reporting to its clients. Through its systematic process described in the declaration of Jennifer Keough, on June 8, 2016, JND processed and delivered a properly addressed envelope with the necessary postage paid, containing a 1-page Cover Letter, the Arbitration Agreement (2 copies), and a pre-paid return envelope, to the United States Postal Service to be mailed to Estella Trammell at 716 Pine Valley Loop, Smithville, Texas 78957. No notice was received that this mailing to Estella Trammell was returned and/or undeliverable. (Dkt. No. 10-3).

AccentCare maintains that throughout her employment, and as recently as April 29, 2017, Trammell consistently reported her mailing address to be 716 Pine Valley Loop, Smithville, Texas 78957. Her Texas Driver's license, issued on March 6, 2017, and her proof of automobile insurance all identify the same mailing address. As a result, AccentCare sent all mailings to Plaintiff, including tax forms, insurance information, and other documentation, to this mailing address. AccentCare used this mailing address for the past 20 years and never received notice that any document was returned and/or was undeliverable. (Dkt. No. 10-1 and 10-2).

Trammell asserts that she never received the arbitration agreement in issue, has no knowledge of it, did not agree to it and did not sign it. Trammell also maintains that, prior to June 8, 2016, when AccentCare alleges JND mailed the arbitration agreement, she notified AccentCare she was having difficulty receiving and sending mail through the United States Postal Service at her home address. She supports these assertions through her Affidavit. (Dkt. No. 14-1).

AccentCare argues that despite Trammell's claim that she did not receive the letter containing the Arbitration Agreement, the mailbox rule creates the presumption that Trammell actually received the letter. AccentCare cites caselaw supporting that proof of a letter properly directed and placed in

a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed. *United States v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007); *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983); *Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 918 (N.D. Tex. 2000); *see also Southland Life Ins. Co. v. Greenwade*, 159 S.W.2d 854, 857 (Comm'n App. 1942, op. adopted) ("…when a letter properly addressed and with postage prepaid is mailed, a presumption of fact (rebuttable of course) arises that it was duly received by the addressee.") The placement of a letter in the mail may be proved by a sworn statement, *Ekong*, 518 F.3d at 287, or by circumstantial evidence such as the sender's customary mailing practice. *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007).

Trammell argues that her denial that she received the Arbitration Agreement at her address is sufficient evidence to rebut this presumption. She cites *Galan v. Valero Services, Inc.*, 2018 WL 447358 (S.D. Tex. Jan. 17, 2018), in support. In *Galan*, the district court found that when a mail recipient denies receipt of an arbitration agreement, the addressee's denial creates a fact question as to whether receipt was rebutted. AccentCare argues that *Galan* is an outlier, and not in concert with the prevailing law that testimony that the addressee did not receive the letter is only enough to rebut the presumption of receipt in limited circumstances, such as when there is evidence of irregularity in the mailing process. The Court agrees.

"A letter properly addressed, stamped and mailed may be presumed to have been received by the addressee in the due course of the mail." *Kozloff,* 695 F.2d at 944. "A threshold question for the application of [this] rule is whether there is sufficient evidence that the letter was actually mailed." *Custer,* 503 F.3d at 419. "Placing letters in the mail may be proved by circumstantial

5

evidence, including customary mailing practices used in the sender's business." *Kozloff, Inc.*, 695 F.2d at 944. In this context, courts often look to affidavits, declarations, and statements of corporate representatives to prove that a letter was mailed. *E.g., Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 919 (N.D. Tex. 2000); *Rodriguez v. U.S. Bank, N.A.*, 2013 WL 5173125, at *2 (W.D. Tex. Sept. 12, 2013) ("[I]t is well settled that declarations made by corporate representatives are sufficient to prove a corporate act, such as mailing notice by certified mail."). On the other hand, "[e]vidence of non-receipt can be used to establish that the notice was never mailed," although a "bare assertion of non-receipt [cannot] create a genuine issue of material fact to survive summary judgment" because allowing otherwise would essentially require proof of receipt when only proof of mailing is required. *Custer*, 503 F.3d at 420.

Because Trammell has failed to point to any irregularities in the mailing process, her mere claim that she did not receive the letter and Arbitration Agreement is insufficient to overcome the mailbox rule. *See Cash v. AXA Equitable Life Ins. Co.*, 229 F. Supp. 3d 542, 547 (W.D. Tex. 2017) (plaintiff's affidavit containing bare assertion she did not receive notice was insufficient to overcome the presumption of receipt without explaining potential deficiency in the defendant's process for mailing); *Rodriguez*, 2013 WL 5173125, at *3 ("[The plaintiff's affidavit stating that a notice was not received] does not interject a fact issue as to whether notice was sent. [The plaintiff] is only in a position to comment on whether notice was received and cannot offer personal knowledge as to whether notice was sent, which is the operative question."). Trammell's assertions that she notified AccentCare that she had trouble in the past receiving mail through the U.S. mail service is not evidence of irregular mailing by AccentCare or its agents.

Accordingly, the Court finds the circumstantial evidence in this case sufficient to prove that the Arbitration Agreement was mailed and therefore, presumptively, received by Trammell. *See Ekong*, 518 F.3dart 287 (citing *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)). Under Texas law, AccentCare notified Trammell of the modification of an at-will employment relationship and she accepted that change when she continued working at AccentCare. Accordingly, the Court finds that the Arbitration Agreement in this case is valid, binding, and enforceable. As such, the district court lacks subject matter jurisdiction over this case and it properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). *Gilbert,* 751 F.3d at 306.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss, or in the Alternative, Motion to Stay Proceedings and Compel Arbitration (Dkt. No. 10) is be **GRANTED IN PART**, the parties be ordered to arbitrate this case, and this case be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

7

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

    SIGNED this 11th day of June, 2018.

                                             ANDREW W. AUSTIN
                                             UNITED STATES MAGISTRATE JUDGE